Good morning ladies and gentlemen. I am advised that all counsel are here for the first four cases, so we might as well get started right away with those. No need to call attendance. We'll start with Zhang v. Sessions. Counsel. Thank you. Your Honor, my name is Trainator Ms. Lemme, and I'm here to offer If you would speak into the microphone, thank you so much. My name is Trainator Ms. Lemme, and I'm here to argue for the petitioner, Sheng Zheng. The petitioner, Sheng Zheng, is a 40-year-old native and citizen of China who is charged by notice to appear in removal proceedings before an immigration judge in New York with having entered the U.S. at an unknown place and on an unknown date without inspection. He alleged that he entered the United States on July 1, 1997 in Arizona, but filed his application for asylum on August 7, 2012, admittedly after the one-year deadline within which an alien may file an application for asylum within the United States. You can assume we know all this from the record. The concern I know you have is that the agency did not find him to have established a fear of future persecution, so you can tell us why you think that's error. Okay, Judge. This case really comes down to as far as a well-founded fear of persecution goes, because there is no explicit credibility determination in this record. I don't see anything obvious that would lead one to believe that the immigration judge meant that he found him incredible, but didn't. So this case really comes down to the omission of one item, and one item of Mr. Zheng's testimony, and then a letter from his mother, and a notice from the Public Security Bureau. Now, as far as the letter from the Public Security Bureau goes, the only reason that appears to have been discounted by the judge is a failure to authenticate it. Now, my primary concern with that is, of course, that is a document straight from the persecutor. I'm not sure how, under the case law of this circuit, Mr. Zheng could have possibly authenticated it. I know the Attorney General has stated that he could have authenticated it by other means, but I don't see what other means would have been available on the record to authenticate a letter from a persecutor of the Chinese government. As far as the letter from his mother is concerned, the letter from his mother was discounted as is commonly the case where it's said that it's from an interested witness who's not subject to cross-examination. However, on the other hand, the immigration judge demanded a letter from Mr. Zheng's sister in Phoenix, which, if he had provided that letter, would have had the same problems. It would be from an interested witness who is not subject to cross-examination. So he's demanding a letter which, based on his judgment of the mother's letter, he would have discounted even if he had gotten the letter. Nonetheless, I mean, the agency found that the respondent has not shown an objectively reasonable possibility that he would be singled out individually for persecution upon removal to China. The agency treated this as a speculative conclusion. Having assigned lesser weight, the IJA having assigned lesser weight to the showing that maybe there was a visit, maybe there was a police report, nonetheless, he had not met his burden to show that he would be singled out and would be persecuted. I took that as a finding based on everything in the record with maybe not having made an adverse credibility finding that the visit never happened, but that even had such a visit happen, that wouldn't have been enough to preclude his return to China generally. Could you speak to that, please? Yes. I don't believe it's speculative at all if the notice from the Public Security Bureau and the phone call from his mother are given weight. I think it's speculative if that testimony regarding that phone call and that notice are given either very little weight or no weight. One interesting thing is that at the beginning of the individual, the department's attorney objected to the mother's letter, but didn't object to the notice from the Public Security Bureau. If you accept that... You think the notice from the Public Security Bureau would be enough to establish an objectively reasonable fear of future persecution should your client return to China generally. Is that right? Yes, I do. I think he asked him to surrender, but really it's not just that. It's also his own testimony, which was not found incredible about his phone conversation with his mother and the letter from her. When you view it in the aggregate, it should give him a well-founded fear of persecution. Wherever he were to return to China, so that these interactions happened in the village some years ago, right? There were four or five visits, and there was this report. Correct. There were four or five visits. Nothing more is required. That satisfies the preponderance. Well, they're asking him to surrender based on anti-government activities, and I believe that his mother's phone call refers to it as having committed treason. Would that give me cause for concern? Would that satisfy the lower burden for asylum that one has of having a reasonable fear of persecution? Yes, it does. I can understand your... Is it correct that all of your client's activities took place in the United States? That is entirely correct, Judge. I don't dispute that part of it. He posted several articles on a website? Yes, he did. I believe there were four or five of them that were about a variety of subjects. There's something that apparently is not treated as relevant, but I find surprising to say the least, and that is the notion that he can be here for 15... Not the first case we've seen. He can be here for 15 years and then go join an anti-Chinese communist organization in the United States and then say, oh, you can't send me back because of what he did here. He's got to say it publicly. He's got to go in front of the Chinese embassy and say communism is for us. The notion that you can come here and get something like a get out of jail free card because once you're here, you say these things which are not punishable here. It reminds me, I'm afraid, of a very old, stale joke about the young man who murders his mother and father and then claims leniency because he's an orphan. But Your Honor, our case law does allow someone to ask for asylum based upon activities that they engaged in the United States. It is part of the case law of the circuit. Those are easy to fabricate claims. Someone has to decide when there is a real risk of future persecution and when not. Now, in every error you've assigned to us, I'm sure you know that we have precedent that has said that the weight to give evidence is a matter for the discretion of the agency, that authentication is something that the agency gets to have some fair amount of flexibility in deciding. I mean, I could cite you cases on each point of error you've assigned to us. You have to show us that this rose to a level where no reasonable fact finder could have failed to give determinative weight favorable to your client. And I'm not sure I understand why we would reach that conclusion. Help us out. All right. Well, to answer Your Honor's question, I mean, as far as the credibility of the claim goes, that's really for the immigration judge to decide. It's not for this panel or the Board of Immigration Appeals to decide whether that is, you made a credible claim. As far as Your Honor's conclusion goes, this really, again, depends on, I would, I can understand Your Honor's concern if... No one disputes that he wrote the articles. No one disputes that. It's the question of whether or not he's got a genuine fear of future persecution. And that's based on the evidence that, as you said, there were questions raised about. With regard to part of that evidence, he pointed to four party members who were arrested upon their return to China. Is that right? But what evidence was there that he was similarly situated to party leaders? The testimony from the party chairman only testified about one leader. It was a former chairperson. He didn't refer to the other three people as leaders. He referred to them, I think even one he referred to as a party member. Meanwhile, there's a document in the record that, where they say, I believe he's the, they make Mr. Zhang the chairman of logistics or something of that nature. He has some sort of position. It is there in the record. The record showed that three were leaders or at least former leaders of the PFDC, and then there was no detail about the rank of the fourth. But there were, as to three of them, they had or were holding leadership positions. I only noticed him saying it was a former, there was a former chairperson. Uh, that person clearly is a leader. I know he referred to one as a party member. I saw that in his testimony, which didn't give me the impression that a party member was, was, was any sort of a leader. Um, let me see if I can find that for your honor. But, but the, the entire, I would agree as far as your honor's original point goes, I would agree with your honor regarding your honor's concern regarding the well-founded fear. If the documents he submitted were not, were not entitled to any weight whatsoever. If it's just about, I published some articles on the internet, they might've seen them. Yes, I would understand that. I wouldn't say that. And what about the Chinese government's awareness as a whole of his activities? I mean, you had the police report from the village. Does that, is that enough to determine that the Chinese government as a whole was aware of his activities and would arrest him on return? Absolutely. There, there, and I believe it's the case out of the circuit too, that one doesn't even need to fear national authorities, local authorities by themselves. One can have a well-founded fear of local authorities and still have a well-founded fear of persecution upon return to their country. All right. I know you want to reserve some time for rebuttal, so let's hear from your advocate. Very good. Thank you. Thank you, your honor. Good morning, your honors. May it please the court. Sena Lee representing the Attorney General. Um, and as you've already discussed, this comes, this case comes down to, um, the lack of proof. Um, that his fears are basically speculative. Um, he didn't. Were they speculative if the letter is authentic? That his mother produced? Well, as a hypothetical, um. Well, the agency's concern was it wasn't authenticated, which I took to mean if it had been authenticated, there might have been more than a speculative basis for the fear, right? That's, that's possible. The problem is not that it's necessarily speculative, it's that the evidence he produced to support it wasn't given, um, you know, conclusive weight. So counsel is arguing that that was error. Why don't you tell us why we shouldn't think so? Because the, the agency, um, determined that, that, that evidence was not persuasive and gave it little weight. Well, not persuasive because it wasn't authenticated and counsel says, how do you expect them to authenticate it? Well, I think, um, one way he could have authenticated it was to, um, have a foreign service officer in the, um, establish that it's an authentic document and that, that could be one way of doing it. U.S. service officer. Correct. Okay. Um, and. The agency seemed to assign some weight to the fact that his sister hadn't offered a letter. Um, I, I was surprised by that because, um, had he not had a sister, that wouldn't have been, um, relevant and he may not be speaking with his sister, um, about, um, this kind of thing, uh, where they may be estranged and a number of reasons for it, but the agency seemed to, uh, see it as a negative mark, um, against him. Why was that a fair, um, reading of the record? Well, the, the agency is, is permitted to, um, determine what sort of corroboration that the petitioner should provide and his sister lives in the United States. So it seems that since they do speak, he testified that they speak, um, that he could have provided a letter or her testimony. He did the agency ignored. It seemed the testimony that the party chair had told, uh, uh, the Jenga told the party chair on several occasions concurrent with the, uh, uh, correspondence or phone calls he had with his mother that the police had been after him. I mean, so he had other kind and the agency didn't give a nod to that. Why wasn't that kind of corroboration, um, equally valuable? The testimony from the party chair that that's, that Jane had, uh, contemporaneously with his conversations with his mother told him that his mother had told him that the police were after him. The agency gave no weight to that at all. Well, because the, the agency had determined that the mother's testimony also, um, gave, gave that letter limited weight as well. And it was just, there was no adverse credibility finding. That's what I find kind of strange. It seemed ultimately to add up to an implicit adverse credibility finding while pointing to individual pieces of evidence that were, uh, you know, technically flawed for some reason. For example, the absence of authentication that judge Reggie has been mentioning. Well, the, the board, um, stated in its decision that it assumed that the petitioner is credible. Um, and even so, um, the petitioner still has to, to provide persuasive evidence to, to show objectively reasonable, um, a fear of returning to China. And the evidence that he provided just wasn't enough. And... Had it been authenticated, would it have been enough? Had all been authenticated, would it have been enough? I would say, um, since that determination is up to the immigration judge and the board, um, I think that's, it's possible that, that could have been enough. Um, and the agency gets, um, wide discretion in determining... Do you see, uh, uh, does your agency see a significant number of cases that are like this having to do with speech in the United States, uh, resulting in their getting some form of relief? Um, that have been granted asylum? Yeah. Well, I see the cases that, where the, the board has, um, that they, excuse me, agency has denied the claim. So I don't see the, the grants. No, I guess I understand that, yeah. Yeah, wouldn't be here if they granted. Right, Your Honor. Um... Does the petitioner have to show that the national authorities are aware of his activities and would take action on his return? Or if the materials from the village have been properly authenticated, his mother's letter and the police report, would that have been sufficient? I think that could possibly be sufficient in some cases. Um, and to answer your question, I don't think that there has to be specific proof that the national government is aware. Um, I believe under a Second Circuit case, the petitioner has to show that the, the government or, um, government officials are likely to become aware or are aware, um, of the petitioner's activities. And it could be local, not national, necessarily. I think that is possible to establish a claim. Um, but, um, as, as Your Honors have pointed out, um, all of his activities did take place in the United States. And the evidence, um, like the country reports don't show that, um, anyone, that the Chinese government is interested in political activists in the United States. It discusses, um, opposition parties in, in China. And, um, furthermore, there's no evidence in the record to show persuasively that low-level members of the petitioner's party are persecuted upon returning to China. And so it basically comes down to, he just didn't provide a persuasive case, um, either through his testimony or through his evidence. And the agency is permitted to, um, to give, to assign weight to his evidence. And in this case, it just was not enough. Um, and if Your Honors don't have any further questions, the government will rest. Thank you. Let me. Your Honors, to answer your... Again, if you could just speak in the microphone. Okay. Sorry. Okay. To answer Your Honors' earlier question, it's page 136 of the record. Uh, Mr. Li refers to one person who was a former party chairman, uh, and then another person named Wen Chin Bao. And then it says the most recent one we have is a party member named Dong Shi Li, who he does not refer to as a high-level official or a chairman or, or anything of that nature. So looking at his testimony, he only refers to one person who had a, uh, who had a title and that's, um, uh, uh, Wong Pin John. As far as the authentic, uh, authentication procedure goes, I take a lot of issue with the argument I just heard. You cannot authenticate someone under the regulations. You cannot authenticate a document with just the U.S. Foreign Service officer. The U.S. Foreign Service officer must go to the, to the, the government and make sure that this person is really an official of that government, which really is going to persecute. I mean, someone could presumably sit down, put a piece of paper on a typewriter or even write it out and, and pretend to be a foreign officer. If a U.S. Service officer looks at the document and says, oh no, this is the exact format that I know they use, that's one more step along the road toward this being an authenticated document. So you're arguing that though that wouldn't have been enough to get you home, that that excuses you from providing any evidence of authentication and that I, I'm not sure is correct. On the other hand, Judge, there are cases where people have to authenticate documents where they're not alleging a fear of going home. In those sorts of cases, I can see that person having to go through that. I understand that, but how does the fact that U.S. Service officer authentication might not by itself be enough, excuse you from getting it at all? Well, it doesn't. We at least know this looks like a genuine document as opposed to looking totally fraudulent. It doesn't, it doesn't excuse it completely. However, it does affect the weight of the evidence that it should have been assigned. It's not clear to why it was given very little weight. But it, but it should, but it should have been given enough weight to get to, to do what? I mean, without a foreign service authentication saying this is what it, this is indeed what these kind of police reports look like? I don't think the foreign service office would have authenticated a document without turning it over to the, to the, to the Chinese government to, to ask them if this person is really an official of that government. I don't believe that's how the regulation operates. I don't think he could have sent it to. I'm not sure how those problems, uh, absolve you from the, um, agency finding that, well, this is a totally unauthenticated document. We're not going to give it any weight or we're going to give it very little weight. Well, I'm not sure it was given any weight at all in this case, Judge. I don't think it was given anything. Tell me how you can argue that the decision on weight was plainly erroneous when, you know, the ability to falsify these documents is real and there's absolutely nothing to suggest that this one even looks like what these documents genuinely look like. Your Honor, there's also no evidence to say that that's not what they look like. And the immigration judge didn't provide any ... You know where the compromise here with your client. Okay. Thank you very much. I think we understand the party's positions. We're going to have to take the case under advisement, but we'll try to get you a decision as quickly as we can. Thank you very much.